IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEVEN RUSINOWSKI and JOSEPH
RUSINOWSKI,

                Plaintiff,

     v.

VILLAGE OF HILLSIDE, JOSEPH
LUKASZEK, ROBERT DiDOMENICO,
DAVID ANDRESKI, and ELMHURST
MEMORIAL HEALTHCARE,

                Defendants.

Case No. 11 C 4772

Hon. Harry D. Leinenweber

## <u>MEMORANDUM OPINION AND ORDER</u>

### I.  <u>INTRODUCTION</u>

Before the Court are Motions to Dismiss Plaintiffs' Second Amended Complaint. (The Court denies Defendants' Motions to Dismiss the first Complaint, Dkt.#s 12 and 14, as moot.) For the reasons stated herein, the Court grants in part and denies in part the Hillside Defendants' Motions to Dismiss; grants in part and denies in part Defendant Andreski's Motion to Dismiss Count IV and grants his request for a clearer statement of Count V; grants Elmhurst Memorial's Motion to Dismiss Count IV without prejudice; and denies Defendant DiDomenico's Motions to Dismiss.

### II.  <u>STATEMENT OF FACTS</u>

At this stage in litigation, the Court accepts Plaintiffs' well-pleaded allegations as true. Plaintiffs Steven Rusinowski

("Steven" or "Rusinowski") and his father Joseph ("Joseph") bring this nine-count suit based on the events of March 4-10, 2011. Steven is 28, lives with his father in the Village of Hillside, and is a student at Elmhurst College. He is also a user of Battlecam.com, a web site in which users role-play with one another in threatening, intimidating, or combative scenarios.

In late 2010 or early 2011, Steven met Defendant Robert DiDomenico ("DiDomenico") on Battlecam.com, and DiDomenico began a campaign of harassment against Steven. DiDomenico began by encouraging people to send pizzas and taxis to Steven's home, and endeavored to send men to Steven's home to have sex with him.

On November 10, 2010, the Hillside Police received an anonymous call from "Michael," who reported that Joseph had two guns and had threatened to kill himself. Police visited the Rusinowskis' home, spoke to both men, and confirmed the report as false. Several similar incidents occurred in early 2011; each time the police concluded that the call was a false alarm. Similar calls were also made to Steven's school. On January 20, 2011, Steven filed a police report regarding DiDomenico's harassment.

On March 4, 2011, DiDomenico called the Hillside Police claiming that Steven was on his WebCam, threatening to kill himself or others or rape someone, while drinking and waving guns around. He may also have said that Steven threatened to rape someone in South Carolina (it is unclear whether the police received this

information by tip or claim to have witnessed it themselves on Steven's video feed).  Steven maintains that he never threatened anyone.

The Hillside Police, led by Chief Lukaszek ("Lukaszek"), responded to the call, warned neighbors, and banged on the Rusinowskis' door.  Steven claims that he showed his hands when asked; the Hillside Defendants claim that Steven refused to come outside when ordered.  Lukaszek pulled Steven to the ground outside, cutting his hand on the cement and hurting his back. Steven was then handcuffed and placed in a squad car.  Steven claims that he was arrested, but the Hillside Defendants disagree. Once Steven was secured, the police searched his home without a warrant and seized two unloaded guns, ammunition, and two beer bottles (one empty, one half full) from Steven's desk.  Steven had a permit for the guns.

The Hillside Police transported Steven to the station and held him there for one to two hours.  From there, an ambulance took him to Elmhurst Memorial Healthcare ("Elmhurst"), where he was placed in seclusion.  No doctors examined Steven at Elmhurst, but a "crisis center worker" told Steven that he was being committed and could not leave.  Steven protested, but the worker was unreceptive to his explanation about the false alarms and harassment.

Lukaszek completed a petition to involuntarily commit Steven. The supervising physician at Elmhurst, Dr. David Andreski

("Andreski"), completed the accompanying physician's certificate, but without examining Steven as required by statute. Andreski also filled out a form transferring Steven to the J.J. Madden Mental Health Center ("Madden"). Andreski indicated on the form that he communicated the risks and benefits of the transfer (it is unclear to whom); however, he wrote down no benefits and indicated that Steven was "unstable." Steven claims that he signed a transfer form, but did not understand it as he was under duress and heavily sedated on Xanax.

Steven was held at Elmhurst for up to 12 hours and was guarded so that he could not leave. At approximately 2:00 a.m. on March 5, he was transported to Madden.

Steven remained at Madden until March 10, 2011. During that time, Steven was given the wrong medication for his anxiety disorder, and so could not sit still or calm down for five days. He reports being medicated against his will, but did not protest in order to keep the situation from getting worse. The mental health workers who worked with Steven noted no suicidal or homicidal tendencies. His hand injury went untreated and became infected.

Upon his release, Steven found that campus security at his school had received an anonymous tip that he kept a loaded gun in his car and was dealing drugs. Upon investigation, the claim was not substantiated. Campus security had also already been informed

of Steven's hospitalization. Stephen's permit to carry firearms was also reviewed as a consequence of this incident.

On March 17, 2011, DiDomenico posted a video on Battlecam.com entitled "[DiDomenico] Thinks It's Funny Calling the Cops on Beer Guy & [Steven] Part 2." In that and other videos, he taunts Steven and laughs about calling the police as a "concerned citizen." DiDomenico also implied in another video that he intended to see that Steven was expelled from his college.

Steven claims that due to this incident he suffers sleepless nights and a decreased appetite, and had to withdraw from one of his classes when he failed a midterm after his hospitalization. Joseph alleges that due to the stress of the incident he has had to have his blood pressure medication adjusted.

Plaintiffs bring the following claims: Count I (under 42 U.S.C.§ 1983 for illegal search and seizure) against Lukaszek; Count II (under 42 U.S.C.§ 1983 for excessive force) against Lukaszek; Count III for battery against Lukaszek; Count IV (for violation of the Illinois Mental Health and Developmental Disabilities Code) against Andreski and Elmhurst; Count V (for violation of the Emergency Medical Treatment and Active Labor Act) against Andreski and Elmhurst; Count VI (for false imprisonment) against Lukaszek and Elmhurst; Count VII (under 42 U.S.C.§ 1983 for unlawful detention) against Lukaszek; Count VIII (a *Monell* municipal liability claim) against the Village of Hillside; and

Count IX (for intentional infliction of emotional distress) against DiDomenico.

### III.  <u>LEGAL STANDARD</u>

On a motion to dismiss under Rule 12(b)(6), this Court accepts as true all well-pleaded facts in Plaintiffs' Complaint and draws all inferences in their favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Plaintiffs need not allege "detailed factual allegations," but must offer more than conclusions or "a formulaic recitation of the elements of the cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Naked assertion[s] devoid of further factual enhancement" will not suffice – a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).

A civil commitment is a seizure implicating the Fourth Amendment, and may only be made upon probable cause. *Villanova v. Abrams,* 972 F.2d 792, 795 (7th Cir. 1992). That is, the police may only seize an individual for commitment if they have reasonable grounds to believe that the person is subject to seizure under the governing legal standard. *Id.* In Illinois, that standard is when an individual "is subject to involuntary admission on an inpatient

basis and in need of immediate hospitalization to protect such person or others from physical harm." 405 Ill. Comp. Stat. 5/3-606. *See Baltz v. Shelley*, 661 F.Supp. 169, 178 (N.D. Ill. 1987).

## IV. DISCUSSION

### A. Hillside Defendants' Motion to Dismiss

Lukaszek and the Village move to dismiss the Second Amended Complaint under Rule 12(b)(6). As discussed below, the Court denies the motion as to the claims against Lukaszek, and grants it in part and denies it in part as to the *Monell* claim against the Village.

#### 1. *Attorneys' Fees for Battery and False Imprisonment*

Lukaszek seeks to strike Plaintiffs' request for attorney's fees in the state law false imprisonment and battery claims. He points to the rule in Illinois that attorney's fees are generally not recoverable absent statutory authority or contractual agreement. *Michaels v. Michaels*, 767 F.2d 1185, 1205 (7th Cir. 1985). Plaintiffs do not address this motion to strike or articulate authority for obtaining legal fees in their response. Accordingly, the Court grants the Motion to Strike. *See Automated Concepts Inc. v. Weaver*, No. 99 C 7599, 2000 WL 1134541, at *7 (N.D. Ill. August 09, 2000).

#### 2. *Search and Seizure*

The Hillside Defendants claim that Plaintiffs cannot state a claim for illegal search and seizure because the Complaint

demonstrates that the police had probable cause. To support this assertion, they cite to the police report attached as an exhibit the Complaint. However, attaching the police report to the Complaint does not mean that Plaintiffs are bound by its contents. *Guzell v. Tiller*, 223 F.3d 518, 519 (7th Cir. 2000). Plaintiffs repeatedly dispute the contents of the police reports throughout their Complaint, for example, by asserting that Steven never threatened anyone. Indeed, Plaintiffs challenge almost every fact on which the Hillside Defendants rely to show "abundant justification" for their search. It is true that all of Plaintiffs' objections may not be sustainable — for example, it is not clear that Plaintiffs may use the collective knowledge doctrine to impute awareness of the false alarms to the searching officers. *Cf. United States v. Blauvelt*, 638 F.3d 281, 289 (4th Cir. 2011) (information undermining the credibility of a complainant is not subject to the collective knowledge doctrine). Even so, to the extent that the Hillside Defendants ask this Court to credit the police report and reject Plaintiffs' contrary allegations, this Court cannot do so at this stage of litigation.

Instead, this Court must determine whether, accepting Plaintiffs' well-pleaded allegations as true, probable cause existed as a matter of law. *See United States v. Ellis,* 499 F.3d 686, 688 (7th Cir. 2007) (where the underlying facts are not in dispute, the existence of probable cause is a question of law). On

the current factual record, however, the Court cannot find that the Hillside Defendants had probable cause as a matter of law. If Plaintiffs eventually concede that Steven waved guns around on his WebCam, it may corroborate DiDomenico's tip enough to give police probable cause, even if he was not making threats. *Cf. United States v. Clark*, 657 F.3d 578, 582 (7th Cir. 2011). At this stage, however, Plaintiffs have made no such concession; they have merely asserted that DiDomenico fabricated the entire incident. Rule 8 simply does not require Plaintiffs to identify and confirm or deny every potentially relevant fact.

This Court thus cannot conclude that the face of the Complaint establishes probable cause. Because a warrantless search of the home is *per se* unreasonable absent both probable cause and exigent circumstances, the Court need not consider whether the Complaint sets forth facts establishing exigent circumstances to deny the motion.

### 3.  *Excessive Force and Battery*

The primary issue underlying both the excessive force and battery claims is whether the force used by police was objectively reasonable under the circumstances. *See Wells v. Coker*, No. 08-3302, 2011 WL 4381488, at *7 (C.D. Ill. September 20, 2011). If it was, both claims are barred. The Hillside Defendants claim that Lukaszek's "minimal use of force" was justified when Steven refused to exit the home and show that he was not armed. To support that

assertion, they point to the police report attached to the Complaint. They contend that where an exhibit contradicts allegations in a complaint, the exhibit trumps. However, the Seventh Circuit has specifically rejected the argument that by attaching police report to complaint, a plaintiff vouches for the accuracy of its contents. *Guzell v. Hiller*, 223 F.3d 518, 519 (7th Cir. 2000). Steven specifically alleges that he followed police orders; Plaintiffs clearly did not intend to vouch for the accuracy of any contrary statements in the police reports.

Evaluating the objective reasonableness of police action under the Fourth Amendment requires consideration of the totality of the circumstances and "careful attention to the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 395-96 (1989). Because the facts alleged in the Complaint, as opposed to the contrary statements the police report, do not indisputably establish that the use of force was reasonable, this Court denies the Hillside Defendants' Motion to Dismiss.

### 4. Unlawful Detention and False Imprisonment

A police officer who unlawfully restrains an individual's movement violates the Fourth Amendment and opens itself to liability for unlawful detention or false imprisonment. *See Jeffries v. City of Chicago*, No. 09 C 7247, 2010 WL 5313491, at *3 (N.D. Ill. December 17, 2010) (citing *Dunaway v. New York,* 442 U.S. 200, 207-08 (1979)). The requirements for an unlawful detention

claim under the Fourth Amendment and false imprisonment claim under Illinois law are very similar. *Warfield v. City of Chicago*, 565 F.Supp.2d 948, 967 (N.D. Ill. 2008); *Meerbrey v. Marshall Field & Co.,* 545 N.E.2d 952, 955-56, (Ill. App. Ct. 1989) ("False imprisonment is an unreasonable restraint of plaintiff's liberty against his will caused or procured by the defendant").

Under both claims, the existence of probable cause is a complete defense. *See Kampinen v. Individuals of Chicago Police Dept.*, No. 00 C 5867, 2003 WL 21982158, at *7 (N.D. Ill. August 19, 2003). However, the Hillside Defendants did not invoke the existence of probable cause (or their alleged compliance with state law procedures) until their reply, and as such that argument will not be considered.

Instead, Defendants relied on their claims Steven's detention was *de minimis* and for a proper purpose. They cite to a case dealing with pre-arraignment procedure to demonstrate that the detention was lawful, but offer no explanation for why Steven was held at the station if, as they claim, he was taken into custody only for delivery to a psychiatric facility.

Plaintiffs focus on the presence or absence of probable cause to believe that Steven committed a crime, and ignore the fact that detention for involuntary commitment may be lawful even absent evidence of other criminal activity. As noted above, in the context of involuntary commitment, probable cause means probable

cause to believe that the requirements of the involuntary commitment statute have been met — that is, that the person was a danger to himself or others. Steven's claims that he posed no safety threat to anyone are insufficient to preclude a finding of probable cause; however, he specifically denies several facts on which the Hillside Defendants' rely to show that the detention was lawful. Accepting Steven's factual allegations, the Court cannot conclude as a matter of law that the Hillside Defendants properly detained him for up to two hours before transferring him to Elmhurst, and denies their motion.

### 5. *Qualified Immunity*

State officials with discretionary or policymaking authority are protected from some constitutional claims by the doctrine of qualified immunity. *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000). Such officials are not civilly liable unless their conduct violated clearly established statutory or constitutional rights of which a reasonable person in their position would have been aware. *Id.* If a Plaintiff cannot show both of those things, their complaint will be dismissed. *Id.* This inquiry is objective; it does not consider officials' subjective motivations, and gives them the benefit of the doubt. *Cowgill v. City of Marion*, 127 F.Supp.2d 1047, 1053 (N.D. Ind. 2000).

A qualified immunity defense is normally presented on summary judgment, but can be available on a motion to dismiss. *Stevens v.*

*Umsted*, 131 F.3d 697, 706 (7th Cir. 1997). However, dismissing a §1983 suit at this stage on qualified immunity grounds is a "delicate matter"; on the one hand, qualified it immunity is a defense to suit rather than just liability, and should be addressed as early as possible. *Jacobs,* 215 F.3d at 765 n.3. On the other hand, FED. R. CIV. P. 8 does not require plaintiffs to anticipate a qualified immunity defense and allege every fact needed to defeat it in the complaint. *Id*. Thus, a court must determine whether the facts actually alleged clearly establish a qualified immunity defense. *Id.* If not, courts have a variety of ways to protect defendants from unnecessary litigation, such as requiring a more definite statement of the claim, a reply to an answer, or summary judgment briefing. *Id.*

In their motion, the Hillside Defendants argue that a reasonable officer would have believed that: the warrantless search of Plaintiffs' residence was justified by the tip and Lukaszek's observations; his use of force was reasonable; and Steven was only held at the station for a "*de minimis* and reasonable" amount of time. The Court has already explained why it cannot conclude from this record that there was no violation of Plaintiffs' constitutional rights. The discrepancy between the facts that the Hillside Defendants rely upon the allegations in the Complaint similarly precludes a finding that a reasonable officer would have found Lukaszek's conduct lawful. Furthermore, although

the conclusory language in parts of the Complaint is not particularly enlightening, the allegations are sufficient to defeat a motion to dismiss when read in light of the complaint as a whole. Accordingly, while Lukaszek's qualified immunity claim may have merit upon a more developed record, this Court cannot conclude that the allegations in the Complaint are so deficient or indicative of qualified immunity that dismissing the Complaint at this stage is appropriate.

### 6. *Monell* Municipal Liability Claim

Municipalities cannot be held liable under § 1983 on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978). Instead (as relevant here), plaintiffs must show that a person with final policymaking authority over the challenged conduct caused their constitutional harm. *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). The parties dispute whether a single act of a final decision maker can be the basis for a *Monell* claim. Plaintiffs are correct. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances").

The critical question, which neither party addresses at length, is whether this case involves such "appropriate circumstances." Specifically, *Monell* liability requires Lukaszek to be the final policymaking authority in this case, and his

- 14 -

actions to be fairly attributable to Hillside. *See Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 676 (7th Cir. 2009). For liability to attach, the final policymaker must have chosen deliberately the course of action in question. *Pembaur*, 475 U.S. at 483.

Whether a municipal official is the final decision maker is a question of state or local law. *Id* at 484. However, neither party undertook that inquiry; indeed, on reply the Hillside Defendants assumed *arguendo* that Lukaszek was the final decision maker. Accordingly, although it seems questionable whether Plaintiffs will be able to make the necessary showing at trial, the Court will deny the motion to dismiss at this time.

Defendant is correct, however, that Plaintiffs' failure-to-train *Monell* claim is insufficient. Plaintiffs' bare assertions that Hillside "failed to adequately monitor, train, educate, and/or evaluate the performance of the officers . . . in the constitutional requirements to use force, make arrests, and/or conduct searches and seizures," is unsupported by factual allegations and insufficient. Compl. at ¶ 96. Accordingly, the *Monell* failure-to-train claim is dismissed with prejudice.

## B. Andreski's Motion to Dismiss

In his motion to dismiss, Defendant Andreski asks that several parts of the Complaint the stricken as inadequately pled. Rule 12(f) specifies that a court "may strike from a pleading and

insufficient defense or any redundant [or] immaterial . . . matter." Ordinarily, when a claim is insufficiently pled, it will be dismissed pursuant to Rule 12(b) or ordered clarified under Rule 12(e). Accordingly, the Court denies Andreski's motions to strike, but considers his motions under Rules 12(b) and (e).

### 1. *Illinois Mental Health and Development Disabilities Code*

Andreski attacks Count IV on several fronts: that the Illinois Mental Health and Development Disabilities Code (the "MHDDC") does not create a civil remedy for the alleged conduct; that 405 Ill. Comp. Stat. 5/3-601 (under which the count is brought) does not apply; that Plaintiffs misrepresent Andreski's statutory obligations; that Count IV is insufficiently clear as to whether it alleges medical negligence; and that, even if it does, the accompanying physician's certificate of merit is inadequate. The Court addresses each claim in turn.

#### a. *Applicability of Section 3-601*

Andreski seeks dismissal of Count IV because it cites 405 Ill. Comp. Stat. 5/3-601, which deals with petitions for involuntary admission, instead of § 3-602, which governs the certification that Andreski completed. Because it cites the wrong section, Andreski claims, Count IV fails as a matter of law. Although the Complaint cites § 3-601, the discussion therein makes clear that the Andreski allegedly falsified the physician's certification governed by § 3-602. The Court concludes that Plaintiffs' scrivener's error is not

fatal, and Andreski was sufficiently put on notice as to his alleged wrongdoing. The motion to dismiss on this basis is denied.

### b. Requirements Section 3-602

Andreski contends that Plaintiffs wrongfully claim that § 3-602 requires him to explain the benefits of the hospital transfer to patients. However, a close reading of Count IV shows that it challenges his failure to identify any such benefits, not his failure to explain them to Steven. Even that, however, is not required by § 3-602. Paragraph 69 of the Complaint appears to include an EMTALA claim grafted (intentionally or not) onto the MHDDC claim. Below, the Court gives Plaintiffs leave to file an amended complaint; if they choose to pursue the EMTALA claim in the amended complaint, this allegation belongs there. In any event, Count IV is dismissed without prejudice to the extent that it alleges that the *transfer* paperwork violated § 3-602. The claim that Andreski violated § 3-602 by signing a certificate without examining Steven, however, remains.

### c. Enforceability of Section 3-602 and Medical Negligence

Andreski next argues that even if he violated § 3-602, Plaintiffs have no private cause of action thereunder, and have not adequately pleaded medical negligence to be able to use § 3-602 as the standard of care in a negligence claim. Section 3-602 does have an enforcement mechanism; 405 Ill. Comp. Stat. 5/6-102 makes it a misdemeanor to receive or detain a person with mental illness

in violation of the MHDDC, or otherwise violate that act. However, this does not resolve whether Plaintiffs have private right of action to enforce § 3-602. *See Rhodes v. Mill Race Inn, Inc.*, 467 N.E.2d 915, 916-17, (Ill. App. Ct. 1984) (existence of a criminal penalty neither bars nor establishes an implied private right of action).

This Court is aware of no Illinois Supreme Court case addressing existence of a private cause of action under § 3-602. However, at least one Illinois appellate court and the Chief Judge of this district have concluded that the Illinois Supreme Court would imply a cause of action for violations of the MHDDC. *See Marx v. Northwestern Mem'l Hosp.*, No. 04 C 5688, 2007 WL 1280643, at *4 (N.D. Ill. April 30, 2007); *Montague v. George J. London Mem'l Hosp.,* 396 N.E.2d 1289, 1293 (Ill. App. Ct. 1979).

Even though they can thus arguably proceed directly under § 3-602, Plaintiffs seek leave to amend Count IV to clearly articulate their theory that Andreski committed medical negligence *per se* in violating § 3-602. *See Threlkeld v. White Castle Sys. Inc.*, 127 F.Supp.2d 986, 989 (N.D. Ill. 2001.) Particularly in light of Andreski's alternative requested relief of a clear statement of the medical negligence claims, this Court will dismiss Count IV to the extent that it alleges medical negligence, but without prejudice to Plaintiffs' refiling an amended complaint to clarify the negligence claim.

If Plaintiffs do choose to refile a medical negligence claim, however, they will need to attach a more complete physician's certification of merit to comply with 735 Ill. Comp. Stat. 5/2-622. A physician's certificate of merit is required to file a medical negligence claim under Illinois law, even in federal court. *Sherrod v. Lingle*, 223 F.3d 605, 613-14 (7th Cir. 2000). Federal courts follow the Illinois practice of liberally construing such certificates in favor of plaintiffs. *Id.* Federal courts should also adopt the Illinois practice of allowing Plaintiffs to amend their dismissed claims to comply with § 2-622, rather than dismissing them with prejudice. *Id.* at 614. (After recent rulings, § 2-622 currently requires essentially what it did in 1989, after Public Act 86-646. *See Cookson v. Price*, 239 Ill.2d 339, 341-42 (2010)).

Even under that liberal standard, the Court agrees with Andreski that the certification here is too sparse. Although Plaintiffs' counsel attests to that Dr. Kaliski reviewed the details and records of this case before writing his (brief) statement, his written report was too bare-bones and equivocal to meet the requirements of § 2-622. Thus, if Plaintiffs pursue their medical negligence claim in an amended complaint, a more thorough certificate will be necessary.

## 2.  *EMTALA Claim*

As to Count V, Andreski complains that Plaintiffs did not specify which sections of EMTALA he violated, or which parts of Count V implicate him.  The EMTALA has two primary relevant provisions:  a requirement to medically screen emergency patients, and one forbidding transfer of unstable patients without weighing the risks and benefits of the transfer.  Plaintiff appears to allege that Andreski violated both.

The Court reads Count V to allege that Andreski violated the medical screening requirement by transferring Steven without assuring that he had been examined, and that Andreski (and through him, Elmhurst) violated the transfer restrictions by engaging in forbidden "patient-dumping." However, the pleading is sufficiently unclear that this Court will grant Andreski's alternative requested relief under Rule 12(e) of a more definite statement. Alternatively, Plaintiffs may choose to clarify Count V if they file a Third Amended Complaint.

Candidly, however, it seems unlikely that Plaintiffs can maintain an EMTALA action against Andreski.  Although the Seventh Circuit has not spoken, essentially every court to consider the issue has concluded that no private cause of action lies against individual doctors under EMTALA.  (That is, doctors may be liable to the Government for civil penalties, but not to private plaintiffs.)  *See, e.g., Binkley v. Edward Hosp.*, No. 02 C 2508,

2004 WL 2211647, *3 (N.D. Ill. Sep 30, 2004) (citing *King v. Ahrens,* 16 F.3d 265, 271 (8th Cir. 1994)); *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1256 (9th Cir.1995).  Because neither party has briefed the issue, this Court will not dismiss this count against Andreski on that basis.  However, should they bring a Third Amended Complaint and choose to press Count V against Andreski, Plaintiffs must come prepared to explain to this Court why it should depart from the conclusions of several circuit courts and at least one other judge in this district.

### C.  Elmhurst's Motion to Dismiss

Like Andreski, Elmhurst asks this Court to dismiss Count IV for failing to provide adequate physician's certificate of merit under 7350 Ill. Comp. Stat. 5/2-622.  For the reasons discussed above, this Court agrees that the certification is insufficient.

In response, Plaintiffs argue that because the parties dispute whether Andreski treated Steven, obtaining an adequate certification is impossible.  If that dispute is the source of Dr. Kaliski's equivocation, he may so state in his report while nonetheless affirming or denying his belief that upon reviewing the evidence this claim has merit.  Once he provides a coherent explanation, the parties and this Court can adequately assess whether his report complies with the statute.  As written, however, certification is inadequate, and thus the Count must be dismissed.

However, in line with *Sherrod v. Lingle*, the dismissal is without prejudice. *Sherrod*, 223 F.3d at 613-14.

Elmhurst does not ask this Court to dismiss Count V (EMTALA) or Count VI (false imprisonment) against it.

### D. Defendants DiDomenico's Motion to Dismiss

Defendant DiDomenico asks this Court to dismiss the intentional infliction of emotional distress claim against him under Rule 12(b)(2); for lack of jurisdiction under Rule 12(b)(6); and on equitable estoppel grounds. The Court considers each argument in turn.

### 1. Rule 12(b)(2)

#### a. Legal Standard

When a District Court sits in diversity jurisdiction, the law of the form state governs personal jurisdiction over defendants. FED. R. CIV. P. 4(k)(1). Illinois' long-arm statute extends Illinois jurisdiction to the full limits permitted by the federal Constitution, and specifically covers defendants who commit torts in Illinois. 735 Ill. Comp. Stat. 5/2-209(c). The key question is thus whether DiDomenico has sufficient minimum contacts with Illinois such that suing him here does not offend "traditional notions of fair play and substantial justice." *Tamburo v. Dworkin,* 601 F.3d 693, 700-01 (7th Cir. 2010) (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

Where, as here, the basis for the lawsuit is the defendant's only contact with the forum state, "specific" jurisdiction is invoked. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 n.15 (1985). Telephones and the internet have considerably broadened specific jurisdiction, but potential defendants must retain some degree of control and predictability regarding where they can be hauled into court. *Tamburo,* 601 F.3d at 701. Thus, if DiDomenico intentionally aimed his conduct at Illinois knowing that its effects would be felt here, and that conduct harmed Steven here, jurisdiction is permissible. *Id.* at 702-03 (citing *Calder v. Jones,* 465 U.S. 783 (1984)).

### b. Discussion

DiDomenico argues that he lacks sufficient contacts with Illinois to support personal jurisdiction, because *at most* he made several phone calls to Illinois. In support, he cites several cases that deal mostly with the remote practice of law. Plaintiffs rejoin that DiDomenico both committed a tort in Illinois and established minimum contacts by making phone calls directing third parties to commit torts against Steven. In addition, Plaintiffs note, DiDomenico should have known that making phony calls to police could subject him to legal action here. Plaintiffs' argument about committing a tort in Illinois only begs the ultimate question; this Court focuses its inquiry on whether DiDomenico had sufficient contacts with Illinois to support jurisdiction.

DiDomenico claims that only one of the phony calls to police can be traced to him, as three came from blocked numbers and/or assumed names. By raising this argument only in his reply, DiDomenico gave Plaintiffs insufficient opportunity to respond. Regardless, Plaintiffs have alleged a reasonable basis to support their belief, and pleading on information and belief is still permissible post-*Twombly*. *See Simonian* v. *Blistex, Inc.*, No. 10 C 01201, 2010 WL 4539450, at *3 (N.D. Ill. Nov. 3, 2010). This is simply not a case where tying the calls to DiDomenico would be impossible or irrelevant. *Cf. Gulley v. Moynihan*, No. 10 C 4435, 2011 WL 2461813, at *3 (N.D. Ill. June 17, 2011).

In considering the jurisdictional consequences of phone calls or Internet contact, Illinois courts consider whether a defendant's actions deliberately and consciously intruded into Illinois. *See, e.g.*, *MacNeil v. Trambert*, 932 N.E.2d 441, 447 (Ill. App. Ct. 2010) (where an eBay seller could not control the buyers location, the sale and related communications did not confer jurisdiction); *Hanson v. Ahmed*, 889 N.E.2d 740, 745 (Ill. App. Ct. 2008) (a phone call initiated by another party is not sufficient contact). Here, in order to harass Steven, DiDomenico deliberately and repeatedly chose to involve himself with Illinois police and schools.

Defendant relies on *Gordon v. Gordon*, in which an Illinois appellate court found that several e-mails and phone calls to Illinois were not sufficient to confer jurisdiction. *Gordon v.*

*Gordon*, 887 N.E.2d 35(Ill. App. Ct. 2008).  There, the plaintiff alleged a host of violations of his divorce agreement, over which a Florida court maintained jurisdiction.  He argued that his ex-wife's calls and e-mails to Illinois, including a call to the Department of Children and Family Services, constituted sufficient contacts to confer jurisdiction here.  The court rejected his "thinly veiled attempt to have an Illinois court enforce the Florida court's order through [a] tort action." *Id*. at 39.  However, there is no other court with current jurisdiction over this case.

In a case somewhat similar to this one, the Seventh Circuit found jurisdiction where defendants had allegedly used their e-mail lists and web sites to encourage potential customers to boycott the plaintiff's business and harass him in person. *Tamburo,* 601 F.3d at 700-01, 706.  In finding that the Illinois long arm statute conferred jurisdiction, the court noted that the defendants had intentionally directed their communications to Illinois, intending to harm the plaintiff here, jurisdiction was appropriate. *Id*. at 708-09.  Similarly here, maintaining jurisdiction does not offend fair play or substantial justice under *International Shoe*.  DiDomenico allegedly waged a campaign of harassment in Illinois, repeatedly contacting the Hillside Police and Steven's school in order to upset him and potentially have him arrested or expelled.

He thus could or should have predicted adverse legal action against him in Illinois, whether by Steven or by police.

Furthermore, Illinois has a strong interest in providing a forum for its residents to vindicate harms from out-of-state actors. *Id.* Finally, given the number of claims and defendants in the suit, it would be wasteful and inefficient to require Plaintiffs to sue DiDomenico separately in New York. *See Powell v. XO Servs, Inc.*, 781 F.Supp.2d 706, 716 (N.D. Ill. 2011). This Court concludes that Plaintiffs have made a sufficient showing to support jurisdiction over DiDomenico, and denies the motion to dismiss.

### 2. *Rule 12(b)(6)*

#### a. *Legal Standard*

DiDomenico next argues that this Count must be dismissed under Rule 12(b)(6), arguing that Plaintiffs inadequately pled intentional infliction of emotional distress ("IIED") under Illinois standards. However, Illinois pleading standards do not govern in federal court. *Lifton v. Board of Educ. of Chicago*, 290 F.Supp.2d 940, 945-46 (N.D. Ill. 2003). Accepting as true all of Plaintiffs' well-pled allegations and drawing reasonable inferences in their favor, this Court concludes that Plaintiffs have pled sufficient facts to pursue their IIED claim.

To sustain this claim, Plaintiffs must prove four elements: (1) that DiDomenico's conduct was extreme and outrageous; (2) that

he intended to cause (or was reckless with regard to causing) emotional distress; (3) that Steven suffered severe or extreme emotional distress; and (4) that DiDomenico actually and proximately caused that distress. *Sornberger v. City of Knoxville,* 434 F.3d 1006, 1030 (7th Cir. 2006) (citing *Pub. Fin. Corp. v. Davis,* 360 N.E.2d 765, 767–68 (1976)). Although fright, horror, shame, or humiliation may be distressing, they are not sufficiently "severe" to support an IIED claim. *Id.* Defendant claims that Plaintiffs have shown neither outrageousness nor sufficient emotional distress.

### b. Outrageousness of the Conduct

The tort of IIED is narrow in Illinois. Indeed, even making a false police report is not necessarily sufficient for an IIED claim. *Layne v. Builders Plumbing Supply Co., Inc.,* 569 N.E.2d 1104, 1108 (Ill. App. Ct. 1991). IIED provides no remedy for "the slight hurts which are the price of a complex society" but addresses only "severe mental disturbances inflicted by intentional actions wholly lacking in social utility." *Knierim v. Izzo*, 22 Ill.2d 73, 85 (1961). Here, Plaintiffs allege a malicious campaign of harassment including false reports to police and schools, hoping to have Steven arrested, committed, or expelled. Given the extent of DiDomenico's alleged efforts and the serious consequences that could (and did) result, this Court concludes that Plaintiffs have sufficiently alleged extreme and outrageous conduct.

DiDomenico appears to claim that Steven concedes that he was drinking and waving guns in front of his WebCam. Thus, he argues, because at least some of DiDomenico's report to police was accurate, his conduct was not outrageous. Plaintiffs allege that DiDomenico fabricated the entire event; thus DiDomenico asks this Court to draw a contrary inference from the fact that alcohol and firearms were recovered near the WebCam. At this stage in litigation, all inferences must be drawn in favor of Plaintiffs. Thus, the court must assume that DiDomenico fabricated the incident, and Steven did not wave guns in front of the WebCam, nor did he threaten to rape, kill, or assault anyone.

DiDomenico further contends that because his harassment took the form of calls to police, it is privileged and cannot subject and civil liability. He identifies no cases, however, which extend that privilege doctrine from the law of defamation into the law of IIED. Indeed, his own cited cases apply the privilege to defamation and false-light torts, but fail to mention it in discussing IIED. *Layne v. Builders Plumbing Supply Co., Inc.,* 569 N.E.2d 1104, 1109 (Ill. App. Ct. 1991). *See also Gvozden v. Mill Run Tours, Inc.*, No. 10 C 4595, 2011 WL 1118704, at *8 (N.D. Ill. March 28, 2011). Accordingly, DiDomenico's calls were not privileged and he is not insulated from liability.

### c. Severity of the Emotional Distress

DiDomenico also claims that Plaintiffs did not allege sufficiently serious emotional distress to support an IIED claim. In their Complaint and Response, Plaintiffs allege that Steven continues to lose sleep and his appetite, and had to withdraw from a class after failing the midterm as a result of the incident. The Complaint also describes Steven's shock and significant emotional disturbance and distress throughout his hospitalization.

Whether symptoms like these can support an IIED claim is a question of degree rather than kind. *Compare Amato v. Ireenquist*, 679 N.E.2d 446, 455 (Ill. App. Ct. 1997) (allegations of "depression, despair, insomnia, anxiety, nervousness and emotional trauma" are sufficient) *with Swanson v. Swanson*, 257 N.E.2d 194, 196 (Ill. App. Ct. 1970) (nervousness, sleepless nights, and fear of nightmares were insufficient). Given the seriousness of the allegations here and the various descriptions of Steven's distress throughout the Complaint, this Court concludes that Plaintiffs have (very narrowly) alleged sufficient emotional distress. However, Plaintiffs are cautioned that they will need to provide evidence of the severity of Steven's symptoms in order to survive summary judgment. *Cf. Knowles v. United Healthcare Servs. Inc.,* No. 05 C 1613, 2006 WL 1430212, at *11 (N.D. Ill. May 19, 2006) (allegations of sleeplessness and loss of appetite, without evidence as to their

severity or any medical treatment, will not survive summary judgment).

### d. *Equitable Estoppel*

Finally, DiDomenico argues that Plaintiffs' claims against him are equitably barred by the fact that Steven signed Battlecam.com's user agreement and expansive liability waiver. That waiver, however, appears designed to protect Battlecam.com and its affiliates, not other users; indeed, it specifies that it creates no third party beneficiary rights. Furthermore, as Plaintiff points out, this suit is based upon DiDomenico's alleged calls to authorities in Illinois. The fact that he later made a video about them on Battlecam.com would not protect him from liability. The Court also questions whether DiDomenico can avail himself of an equitable estoppel claim under the user agreement that he also may have violated. The agreement prohibits users from bullying, intimidating, or harassing other users, and from using Battlecam.com to do anything that is unlawful, malicious, or misleading. If, as he claims, this suit implicates conduct on Battlecam.com, his own alleged conduct violated the user agreement. Accordingly, this Court will not dismiss the Complaint on the basis of equitable estoppel.

### V. <u>CONCLUSION</u>

For the reasons stated herein, the Court rules as follows:

1.    Denies Defendant Joseph Lukaszek's Motion to Dismiss;

2.    Grants Defendant Village of Hillside's Motion to Dismiss in part and denies it in part;

3.    Grants Defendant David Andreski's Motion to Dismiss Count IV in part (without prejudice) and denies it in part, and grants his request for a clearer statement of Count V;

4.    Grants Defendant Elmhurst Memorial Healthcare's Motion to Dismiss Count IV without prejudice; and

5.    Denies Defendant Robert DiDomenico's Motion to Dismiss.


**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 12/29/2011